Good morning. My name is Emmanuel Osage-Eke. I represent the plaintiff's appellant. With your permission, I'd like to reserve three minutes of my time for rebuttal. You'll have to watch the clock, though, because if we ask a lot of questions, we may take you  You know, this case is about Mrs. Sally George and her family's more than 15 years' struggle to adjust their immigration status. It is about the employment-based immigrant visa petition from I-140 that was approved in 2002. and revoked about 12 years later by the service. It's also about the denial of the family's Let me stop you to ask a question, because we are familiar with the facts. And I think the issue is that your client did not have the required certification prior to the issuance of the 2002 I-140. So that was a requirement, and she didn't meet it. So why was it improper to revoke the approval once that mistake was noticed? Your Honor, because administrative irregularity will sometimes lead to basic notions of fairness. We're talking about 12 years after the fact, and they're the ones who made the mistake. They even issued a memo that gave the impression that they had contacts with government. Even the request for evidence that was sent, they talked about contracts from the employer. Well, even assuming that estoppel lies against the government, at least my reading of it is that there is no place where the government affirmatively said you don't need that certification or we're waiving that certification requirement or anything like that. So, I mean, I guess I'm not sure if it had been revoked in 2002, your client would have been gone a long time ago. So why is it unfair? Okay, Your Honor. First, the certification you are talking about was not required for the I-140. It's required for the adjustment, which is why this case took a while. The reason this is a problem, your Honor, even the judge, the district judge, acknowledged the delay. If they had denied it and told her that there's a problem right there, she could have turned around and just filed and be right on the line. Because by the time it was approved, she had everything that was required to obtain the I-140. She was eligible. I don't know. Government's case is not really that she's not eligible. But the issue is that the argument is that, oh, at the time she applied, she didn't have it. But the problem is, at that time, the government, the service, they had a lot of backlog of nurses. They had a shortage of nurses. They had those in the system trying to come in because of the requirements of social security information. So do you concede that at the time she applied, she did not fulfill the requirements? It turns out that's what they are saying. I have a couple of questions. Why didn't then she time it right? Why didn't she just wait until she got her what was needed before she actually applied? Your Honor, I don't know why, because she's not a lawyer. She's not the born lawyer that she filed. My understanding at that point was that the service... So you're primarily, it seems like, relying on equitable estoppel, that it's not fair for the government now after this many years. That's part of the argument, Your Honor. Well, it seems like that's your primary argument at this point. But let me ask you, what's the standard of review for us at this point in time regarding the equitable estoppel claim? Abuse of discretion or de novo? Your Honor, I think it should be de novo. Tell me why I'm asking. Yeah, because the facts in this case, there are about at least five or six contacts with the U.S. government where they kept assuring her that all is well. They sent her an approver. Your Honor, if I may bring your attention to the Supreme Court in the Mosas case said that government is bound by the arts. Actually, the government cannot deny with impunity the binding effects of their representations. And if you look at the Hull-Albert and the United States case, government is bound by the arts, omissions and declaration of its agents within the scope of the authority, Your Honor. They're the one, if they are denied it right then, she would have been able to turn around and just file and be right there on the line. Within a few, they wouldn't be talking about this issue. I'm sorry, did you state a case as to why we would apply de novo review? I want to make sure I understand. Your Honor, I'm searching why the issue of the initial compliance is not, because... What's your best case, if you could tell me, for applying equitable estoppel against the government in this immigration context? What's the best, what's your best case? Well, the best case, Your Honor, is Shostak. Shostak is a CRR. And also Breedit and HECO, both of them together, Your Honor. They address exactly the same issue. In the Shostak case, the commissioner realized that they made a mistake and decided to, in terms of the task assessment and what is... The trustee had disbursed the funds based on the representation of the commissioner. The court said you can't do that. You can't, yeah, maybe you made a mistake, you changed your mind, you can't do that. That's what happened in Shostak, Your Honor. And in Breedit... But the case pretty established that there must be an affirmative act by the government. What's the affirmative act here? Your Honor, the affirmative act is the issuing of a decision and issuing an approval notice with a seal of government on it. That says... So it's your position that once it is approved, it can never be undone, even if it's the next day, if it's a mistake? Well, it's not... It has to be reasonable time, Your Honor. Part of my argument is that 12 years is not reasonable. The ability to revoke is subject to reason. I guess I'm just trying to understand your argument because what you answered to Judge Murguia is that the affirmative act is the initial approval and that that can't be undone. And if that's true, then even if it was a mistake and even if it was caught within a week, if we accept your initial argument, that could never be undone, even if it was a mistake. But I don't understand... That's not my solution. So with all due respect... I'm sorry, Mike. Let me let you finish. No, no. So what exactly is the affirmative act? Is it merely the passage of time? That is one, Your Honor. And not just the passage of time. There were repeated... I attended several adjustment interviews with them where they reviewed the paperwork and said, you have 140, it's okay, but you still have not got the CGRF because of the English. So put them for a while, satisfying the English language requirements. Let me ask. While the passage of a long period of time might be a grounds for equitable stoppable in some cases, this is against the government. Yes, Your Honor. And have you found any case that says in the absence of an affirmative act, the passage of time can operate as equitable estoppel against the government? Your Honor, I can also... First, I want to clarify that that's not the only argument I'm making. Time is one of the factors. It's not just that. But to respond to your question, Your Honor, I will refer to the Miranda case where 18 months was heard to be substantial, and it was a ground for equitable estoppel, 18 months delay. But the point I'm making here is that that is one of the arguments that we are making. It's not... But Miranda requires an affirmative act. Your Honor, the Miranda act, 18 months was a delay, was heard to be enough affirmative conduct, 18 months delay. But it wasn't just the 18-month delay in Miranda. That's what Miranda stands for. It's not just the delay. There has to be an affirmative act on the government. Your Honor, the other... That's part of my argument in addition to the issue of delay, Your Honor. Like I said, it's not the only point. The only... In addition, there was a memo. They issued a memo which seems to... which was the basis for which these approvals were issued at that point. Which memo are you referring to? Because some of the things in the record seem to alert her earlier that there was a problem. For example, there is a denial in about... It looks like 2006 of an application for permanent residency, which says that she failed to submit the required document and so she was being denied. So why is that an affirmative blessing of the propriety of... I mean, it seems like, you know, maybe even the opposite, but certainly not an affirmative act to say that the original approval was correct. Your Honor, the... You know, I think there are two different sets of I-140 that were... Yes, there's a 2002 and the 2006. But one, her main application was the I-140. She was... Right, but what document, what specific document, are you relying on to say that there was an affirmative act saying that your approval in 2002 was correct? Your Honor, the request for that additional evidence... What page of the record should we look at for a document that says that? More specifically, Your Honor, I want to refer to the memo. The memo that was generated by the service that talked about change of policy in adjudicating I-140 for nurses. That claims to have changed, allow you to be approved once you bring the documentation showing that you have passed or you have the certification. That is on page 85, Your Honor, of my... Page 85 of the record? Yes, Your Honor. Okay, thank you. Your Honor, I wanted to refer, in addition, refer this court to other cases that... The Breda case talks about... I just want to point out, you're beginning to use your rebuttal time, and you're entitled to do that, but you're under three minutes at this time. Okay. Your Honor, the series of cases, the Mercer case, the Breda case, the Gestapo and the District INS case, the Villanelle and INS case, all of these talks on the fact that a defect, technical... In addition to that, I want to also refer to the Denver 2-4 case. They all talked about the fact that technical defect alone should not be the basis for which you adjudicate this. This is government should be able to overlook administrative irregularity where the notion of fairness requires it. Even the district court judge was very sympathetic about the damage that had been done in this case, but he said it was just negligence, which, with all due respect, I disagree with. I would like to reserve the rest of my time. You may do so, Sven. We'll hear from the government. Good morning, Your Honors. May it please the Court. Hans Chen from the United States Department of Justice, representing the defendants at Belize. Ms. George filed an I-140 visa petition on a day when she did not meet all of the qualifications for that visa. When did she achieve the qualifications? Well, there are two sets of qualifications, Your Honor, and she met them at different dates, but all of which occurred after the filing, which established the priority date. Right. I'd still like to have the answer to the question. One set of requirements required her to show that she had the equivalent of an American degree in nursing. She did not obtain such a degree until 2012, Your Honor. I'm sorry, yes, 2012. September 2012 is when she got the American degree, and there's no evidence showing that her foreign education was the equivalent. There is a second set of requirements that she met a little earlier, but still after the priority date. That is the requirement for a Schedule A designation, and for that she needed to meet, pass the NCLEX-RN exam, which she did in October 2002, and that's several months after the priority date. And so what Ms. George did was choose to file a petition when she had not met the qualifications, and in doing so, she jumped in line, because the priority date is what establishes your place in line for the entitlement to a green card. What she's trying to do in court today is improperly invoke the disfavored doctrine of equitable estoppel. The district court properly found there was no affirmative misconduct by the government. That is a prerequisite, as established by this court, for the invocation. What's the standard of review on equitable estoppel? The parties didn't brief that issue, Your Honor. I believe that it could be an abuse of discretion standard, because the district court would have granted estoppel as a matter of equity, and so those actions would be— Do you have any authority? Do you have any—I mean, it could also be de novo? Your Honor, I don't have any authority. As I said, we didn't brief that. We're happy to brief that subsequently. But even under the de novo standard, Your Honor— Talk to me about that. Even under the de novo standard, there's no reason for this court to invoke the application of equitable estoppel. Equitable estoppel, as I mentioned earlier, is disfavored. It's disfavored— When you say it's disfavored, are you arguing that it can never be applied in an immigration context? No, Your Honor, and there's cases saying that it can be applied. Okay. But it is disfavored because it violates or it touches on separation of powers, and it allows a party like the plaintiffs here to bind the government based on a wayward official in a way that Congress never intended. And so what did Congress intend here? We know. We know that in 8 U.S.C. 1155, USCIS may revoke a petition at any time, not within a week, not within a year, not within— It does seem—I mean, just taking a step back, this is a layperson who's done something that maybe should have been denied at the time and explained to her what she needed to do that she hadn't yet done, show why her foreign education was good enough and go ahead and pass this test, which she did fairly shortly thereafter. And from her perspective, it really is bewildering, I would say, because even in the absence of an affirmative act, there certainly nothing happens to disabuse her of the illusion that she's properly got this document for some 10 years. And I guess I'm wondering what effect, if any, it has that by 2012, even by your concession, she does meet all the requirements. Is there some mechanism by which she can receive a new date as of the time that she was in fact eligible? Well, Your Honor, to answer your question, I think I have at least two things I'd like to say. The first is the question of whether she was disabused of her failure to satisfy the requirements. And, Judge Graber, as you noted yourself, in 2006, she was informed that she had not met the requirements, and so there's no— Yeah, it was with respect to the other I-140, but it still maybe would have given her the same level of information. Would you answer my other question, though? Because it's somewhat disturbing to me that as of today and as of 2012, she did meet the requirements. So what do we make of that? Well, Your Honor, two things. One, she can reapply, and in fact she has reapplied with a new I-140. So if that's true, is this whole thing moot? No, Your Honor, because of the issue of priority dates. Whether a green card is ready for an individual depends on their priority date, and their priority date is dependent on whether and at what time they satisfy their requirements. So the entire result of this case is whether she gets a 2002 priority date or, let's say, a 2012 priority date? Correct. That's what's at stake? It's never been clear. The plaintiffs have never made that clear, but I suppose you could see that as one benefit if she were to prevail, that she would win. But, I mean, that's really all that's at stake, it sounds like. As far as the government can see, yes, Your Honor. What does explain the government's long delay here? In noticing the error in this case, it seems like at a certain point shouldn't those who interact with the government be entitled to rely on the government's assurance here, even if it was implicit? There's two questions, Your Honor. Why did the government take so long to realize its error? It's not clear from the record, and I don't want to speculate about anything that's outside of the record because this is, after all, a record review case. What I can say is that she had continuing applications over the years and that in continuing to review those, the agency had occasion to realize its error, the error made in 2002. And as to your second question, Judge Moria, are the plaintiffs entitled to rely on the government's actions? And the question, I think, is, is she entitled to equitable estoppel? And the answer, unfortunately, is no. The case law from this circuit is that affirmative misconduct is required for equitable estoppel to lie against the government. There was no affirmative misconduct. There was, at most, as perhaps you're implying, Judge Moria, some negligence by the government in not realizing its error sooner. But as you indicated, there were some requests for modifications. Is that what she was submitting? Is that periodically? No, Your Honor. What she did was file an I-140 in 2002, which is at the visa petition issue here, and then she also filed another I-140 in 2006, and that I-140 was not adjudicated for some time. While that was being adjudicated is when USCIS revoked the earlier I-140. So that's what I'm referring to, Your Honor. But could I ask a question going back to the qualifications? Yes. Am I correct that there were alternative ways to satisfy the qualifications, either having the Schedule A designation, passing that test, or having proof of the equivalent of a degree that would have been issued in the United States, which was the 2012 degree? By October of 2002, when she passed the test, would she have been entitled to the I-140? No. And let me clarify. I understand my answer earlier may have been unclear. There are two sets of qualifications. She must meet both. Within each set of qualifications, there are, yes, alternative ways to satisfy them. So one set of qualifications relates to her Schedule A application, and that can be met in one of three ways. She did not meet any of those until, at the earliest, October 3, 2002, when she passed the NCLEX-RN exam. Again, that's after the priority date. The second set of requirements that she also had to meet had to do with her education. She could have proven that either with an American degree or with the equivalence of an American degree. There's no evidence in the record, and this goes to the matter of the motion to reopen, which is also under appeal. There's no evidence in the record that she met those education requirements through her Indian education, and she didn't receive an American degree until 2012, clearly after the priority date. So that goes to the qualifications. But not long after the priority date. Not long after, Your Honor, so she only jumped in line a little bit. But that's the principle at issue here, is that she jumped in line by winning for herself improperly, and I don't want to impute any evil motives to her, but that's, in fact, what she did is jump in line because she secured for herself erroneously a priority date before she had all her qualifications in line. I just got confused again by she jumped in line just a little bit. Okay. Was she qualified before 2012? She was qualified before 2012, but not before her priority date. So she was qualified once she passed the NCLR test? Yes, but for the purposes of this inquiry and for the purposes of the I-140, that's irrelevant. The only relevant issue having to do with the facts of this case is that there is a priority date. Wait, now I'm confused. If we were just looking at everything that happened, what would have been her correct earliest priority date that would be available? Is it October of 2012, I mean of 2002, or is it in 2012? I believe it's 2012, Your Honor, because that's when she would have had both the NCLEX-RN to meet the Schedule A requirements. And has she applied for that? That's what you were saying earlier, that she has once again applied for? She has once again applied after 2012, Your Honor. There's a 2015 I-140 out there. That's on the record, but to answer your question, yes. Okay. A couple of questions. One, with reference to Miranda versus INS, the Supreme Court case, it seems like in that case there was a lot of reference to affirmative misconduct, but ultimately the court didn't reach affirmative misconduct because they were just looking at the delay. And they said in that case, even though it was not prompt, I think it falls short of establishing such conduct that the government failed to promptly process the application. So why aren't we just focusing on whether the processing of the application was prompt here when it took as long as it did in this case? I would distinguish Miranda in at least two ways, Your Honor. The first is that this is not a processing case. This is an acknowledgment or recognition of error. And I think that it's much more difficult for an agency to apprehend an error it has made than to simply process an application for the first time. There are different administrative priorities and principles at play. The second thing I would say, Your Honor, is that in Miranda, there was not a countervailing statute that militates against the application of equitable estoppel. What I'm talking about is 8 U.S.C. 1155, the statute that says USCIS may revoke a visa application that's improperly granted at any time once it apprehends its error. That statute is the congressional will that equitable estoppel would wrongly contravene. My last question for you is it sounds like we have this prior application and we have a subsequent application. This priority date, she felt short of the requirements just by I think a relatively short period of time. It was a matter of a few months. It seems like she has a subsequent application which sounds like she's met all the requirements just from what we know in this case. Would this case be suitable for mediation? No, Your Honor. It's not suitable for mediation because as a matter of law, Ms. George is not entitled to that earlier. But she might be entitled if by grace of the government to a priority date in 2012 when you concede that she met all of the requirements. And this is equitable. I mean, considering one of the things we are considering is equitable estoppel, it seems like the government should be able to factor that in as well. I understand the court's desire to do equity here, Your Honor. Equitable estoppel, specifically that remedy. No, we're not talking about that. Mediation allows people to come to a conclusion that isn't related to the specific arguments being made. That's really the whole point of it. So is there some bar procedurally or legally to agreeing on a priority date that meets the legal requirements but is earlier than the pending application? Yes, Your Honor. The regulation 8 CFR 103.2B1, which has been expounded upon in presidential BIA, Board of Immigration Appeals decisions like Taiyang Foods and Matter of Wings Tea House. And what does that say? What is the rule? That says that if you do not have all of your requirements in place by the priority date, then you get denied. No, no, that's not what I'm asking at all. I'm asking if there were a negotiation, a negotiated settlement, whether there is any bar to granting a priority date that meets the legal requirements, that is, that is post whatever that day is in 2012 but is earlier than the pending application priority date, which you said was 2015. So is there a legal bar to that? There is no applicable mechanism for a mediator to compel USCIS. I'm not asking about compelling. That's the whole point of mediation. Well, there's no mechanism for USCIS to grant an earlier priority date than the filing of an I-140 in which the I-140 satisfies all of the requirements. No, no, Your Honor. There is no way for us to take an application that was filed in 2015. And one in 2002 and one in 2006. I mean, there's a bunch of them. That seems unique. Or is it? I don't know. I mean, I'm just going on what we have here. But it looks like you're really focused on that first one. The 2002 one? Yes. All right. But there's been subsequent, and from what I can tell, just from reading the record that we have here, knowing that she complied within months, you know, and if she had just held on to her application for a few months, she would have been in compliance and without any problem, from what I can see, in going forward. So I'm just finding it interesting to hear, if she's got a couple of other applications, it sounds, since then, why wouldn't you be able to say, okay, well we know she was deficient on this first one, but there's subsequent ones here that, you know, maybe we can pick up from there in light of the fact that even though we understand government can make mistakes, there was a 10 to 12-year time period for it to recognize its mistake. Yes, Your Honor. There was a mistake, and it took several years to recognize that. The 2002 petition, she chose to file that before she had all qualifications in order. The 2006 application was denied. That denial was affirmed by the district court, and it's not before the court today. That issue was waived by plaintiffs. So if the 2015 is granted, is there a green card available to her? Not right away, Your Honor. So that's the problem? Yes. Is that the later priority date would still not, at this time, permit her to stay in the United States? Not at this time, Your Honor. When you say not at this time, why do you say that? The way priority dates work is that they send up a flag, and they say this person has met all her qualifications for a visa. Give her the opportunity to adjust status when the backlog of adjustment of applications works its way to her point in line. What's the backlog? Where are they now? I think, Your Honor, that they are adjudicating applications filed 10 years ago, in 2005. So if she filed, she's got seven or eight more years to wait. So 2012 wouldn't even help her very much, but it would help some. Yes, Your Honor. And I'm out of time, so let me just conclude that it's clear from the time, that shouldn't matter to you if you're out of time. Well, Your Honor, I do strive to obey the timer here in this instance. But what we have here is a case where Ms. George filed a petition that she was not qualified to file. The government, yes, took some time to realize its error, but recognized its error, and it did so under the auspices of the congressional scheme at 1155, 8 U.S.C. 1155. That ability, that discretion for the government to revoke a petition at any time sadly does not permit the remedy that Ms. George seeks of an earlier priority date than one established by a petition that she filed where she does have all her qualifications in order. Thank you, Counsel. Thank you. Mr. Eke, you have some time remaining. I want to quickly respond to some of the representations made by the government lawyer. First, regarding the I-140, I want to clarify that she was eligible for it as of 2002, as of October 2nd or so, 2002. The education she's talking about, the services she's talking about, the degree, that is not necessary for the I-140. It's only necessary for the adjustment, the I-485. So I want that clarified. I know your Honor wanted that. You asked a lot of that question, and it was really the answer, so I thought I would clarify that. Also, your Honor, the 2006 I-140 that was denied was also educated in 2012. So all of these problems came up since about 2012, 2013. She had no idea that there's any problem with the applications until just a few years ago. And regarding mediation, your Honor, we've tried to approach government. I spent about nine months discussing with counsel, trying to resolve this. We reached some kind of understanding. My clients were ready to compromise. We were willing to take anything that they had to offer, and we had some kind of agreement. Six, nine months later, I came back and said these officers, the new officers, they changed their mind.  That's why we are here, your Honor. The new application, 2015, has been approved, but we need the I-485 to be reopened so that she can adjust, and so that her family can also adjust. She was eligible for the petition in 2002. She passed the exam. She got the California license as a nurse. By the way, she's an NICU nurse. The way I first met her was that she takes care of premature babies, and they're critically ill. Of the record, I want to say that the way I first met her was that she took care of my baby. My child had cerebral palsy, and you were born as a premature, and she was the nurse who took care of him. That's what brought me in this case. She's a major asset to this country, your Honor. No criminal record, her family, they have done well. She was eligible for the I-140 in 2002. I've spent a lot of time with counsel trying to get this matter resolved. At one time, he said, well, I've been able to do it. Nine months later, he came back and said he couldn't persuade them to do it. Thank you, your Honor. Thank you, counsel. The case just started. It is submitted.
judges: Graber, Murguia, Bolton